**Joseph HART; Mary Hart,**
**Debtors/Appellants,**

v.

**SAN DIEGO CREDIT UNION and**
**David Skelton, Chapter 13**
**Trustee, Appellees.**

**No. 09CV1017 JLS (POR).**

United States District Court,
S.D. California.

March 1, 2010.

---

Karen S. Spicker, Michael G. Doan, Doan Law Firm LLP, Carlsbad, CA, for Debtors/Appellants.

Rebecca E. Pennington, San Diego, CA, for Appellees.

## ORDER REVERSING AND REMANDING DECISION OF BANKRUPTCY COURT

JANIS L. SAMMARTINO, District Judge.

Joseph and Mary Hart ("Appellants") appeal from the Bankruptcy Court's Order and Decree on the Motions to Value Collateral and Avoid Liens, dated May 6, 2009 and entered on that same date. The Notice of Appeal to the United States District Court was timely filed on the date of that Order and Decree, and a written statement of election to have the appeal heard by the district court was filed with the Notice of Appeal pursuant to Bankruptcy Rule 8001(e). For the reasons stated below, the Court **HEREBY REVERSES** the decision of the Bankruptcy Court and **REMANDS** for proceedings consistent with this opinion.

## BACKGROUND

On December 31, 2008, Appellants filed for Chapter 13 relief and a meeting of creditors was held on February 6, 2009. (Appellants' Brief at 2.) Appellee, David Skelton, Chapter 13 Trustee, objected to the confirmation and a hearing was set for

March 11, 2009. (*Id.*) Prior to filing the Chapter 13 case, Appellants received a Chapter 7 discharge, filed on December 7, 2006 with discharge entered on March 13, 2007. (Appellants' Brief at 13.)

On February, 27, 2009, Appellants filed a motion to value and avoid the junior trust deed of Countrywide Home Loans, with a hearing date set for March 24, 2009. (Appellants' Brief at 2; *see also* Doc. No. 2 (Appellant Transmittal of Bankruptcy Matters).) The motion went unopposed. (Appellants' Brief at 2.) At the hearing on the motion, Judge Taylor continued the hearing to April 28, 2009 on the basis of Appellants' defective service because less than 28 days notice was provided to the creditor. (*See* Doc. No. 7 (Supplement to Transmittal of Appeal, Transcript of Proceedings on March 24, 2009).) At this time, Judge Taylor expressed concerns with Appellants' motion, specifically in regards to Appellants' requested relief under 11 U.S.C. § 506(d) and the decision in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). (*See id.*)

On March 23, 2009, Appellants re-noticed the motion for hearing on April 28, 2009 and filed another motion for valuation and lien avoidance for a third deed of trust held by San Diego County Credit Union for hearing that same date. (Appellant Brief at 3; *see also* Doc. No. 3 (Appellee Transmittal of Bankruptcy Matters).) The motions went unopposed and were ultimately granted. (Appellants Brief at 3; *see also* Doc. No. 1 (Notice of Appeal, Order and Decree attached).) Judge Taylor, however, denied the lien avoidance requests under 506(d), but ordered avoidance under 1322(b)(2). (*Id.*) Judge Taylor also ordered that avoidance would be conditional upon plan completion and discharge. (*Id.*)

Appellants' appeal of Judge Taylor's Order and Decree was filed on May 6, 2009.

(Doc. No. 1.) Pursuant to this Court's order setting the briefing schedule, Appellants filed a memorandum in support of their appeal on September 4, 2009. (Doc. Nos. 4 & 5.) Appellee David Skelton, Chapter 13 Trustee filed a motion to intervene in the matter, which this Court granted on October 5, 2009. (Doc. Nos. 8, 10.) Appellees' memorandum in opposition to the appeal was thereafter filed that same day. (Doc. No. 12.) The matter has been taken under submission and decided on its papers. (*See* Doc. No. 4.)

## LEGAL STANDARD

The district court has jurisdiction to hear an appeal from the bankruptcy court in this district under 28 U.S.C. § 158(a). A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *See In re Karelin*, 109 B.R. 943, 946–47 (9th Cir. BAP 1990). Whether the bankruptcy court in this appeal correctly applied 11 U.S.C. §§ 506 and 1322(b)(2) is a question of law to be reviewed *de novo*. *See id.* at 947.

## DISCUSSION

Judge Taylor's May 6, 2009 Order and Decree reads in pertinent part:

1. The value of Debtors' residence ... is $410,000.00;

2. The balance owing to the holder of the first trust deed against the Home is greater than $410,000.00;

3. The Third Trust Deed of San Diego County Credit Union ... is wholly unsecured as a result;

4. As a result and pursuant to section 1322(b)(2) the Creditor's lien may be modified and stripped by this Plan;

5. Under the Plan the Creditor will be treated and paid as unsecured creditor; and

6. Upon completion of the Plan and Debtors' discharge, the debt to Creditor secured by the Third Trust Deed shall be deemed fully satisfied and Creditor shall take all steps necessary and appropriate to reconvey and release the Third Trust Deed against the Home.

(*See* Doc. No. 1.) Appellants raise three legal issues on their appeal: (1) whether the Bankruptcy Court erred in denying lien avoidance under 11 U.S.C. § 506(d); (2) whether the Bankruptcy Court erred in concluding that 11 U.S.C. § 1322(b)(2) operates to void liens; and (3) whether the Bankruptcy Court erred by requiring discharge as a prerequisite for lien avoidance despite Appellants' previous discharge under Chapter 7 and 11 U.S.C. § 1328(f)(1). (Appellants' Brief at 2; Appellees Brief at 2.)

## I. Applicable Provisions

Appellants allege that the Bankruptcy Court erred by disallowing lien avoidance under 11 U.S.C. § 506(d) while ordering avoidance under 11 U.S.C. § 1322(b)(2). Chapter 13 generally allows for avoidance of liens, but there is an exception for homestead liens attached only to the debtor's primary residence. *See* 11 U.S.C. § 1322(b)(2); *see also Zimmer v. PSB Lending Corporation,* 313 F.3d 1220, 1222 (9th Cir.2002). Thus, the interplay between Section 506 avoidance and the anti-modification provision of Section 1322(b)(2) must be addressed.

Section 506(a) of the Bankruptcy Code provides:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value

of such creditor's interest ... is less than the amount of such allowed claim. 11 U.S.C. § 506(a). "[This] section separates an undersecured creditor's claim into two parts—he has a secured claim to the extent of the value of his collateral; he has an unsecured claim for the balance of his claim." H.R.Rep. No. 595, 95th Cong., 1st Sess. 356, 1978 U.S.C.C.A.N. 5963 (1977). As Judge Taylor ordered, the amount owed under the first trust deed in this case is greater than the value of the Home, and therefore both junior trust deeds are not allowed secured claims under Section 506(a). (Doc. No. 1; *see also Zimmer v. PSB Lending Corp.,* 313 F.3d 1220, 1223 (9th Cir.2002).) To the contrary, the junior trust deeds are wholly unsecured. (Doc. No. 1.)

Section 506(d), however, provides for avoidance of a lien which is *not* an "allowed secured claim" under 506(a). 11 U.S.C. § 506(d) ("To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void ..."). In *Dewsnup v. Timm,* however, the United States Supreme Court held that a Chapter 7 debtor cannot void a lien to the extent that the loan was undersecured under application of Section 506(a): "Therefore, we hold that § 506(d) does not allow petitioner to 'strip down' respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502." 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

Section 1322 sets forth the elements of a confirmable Chapter 13 plan. *See* 11 U.S.C. § 1322. Subsection (b)(2) states that the plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims ..." 11

U.S.C. § 1322(b)(2). The United States Supreme Court in *Nobelman v. American Sav. Bank* clarified when a creditor is a holder of a secured claim in the debtor's residence such that it is protected by § 1322(b)(2). 508 U.S. 324, 327–333, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). The debtors argued that, under § 506(a) bifurcation, only the holders of secured claims—those claims to the extent of the value of the property—are entitled to § 1322(b)(2) protection. *Id.* at 328, 113 S.Ct. 2106. The Court rejected this bifurcation and stripping down of the undersecured mortgage because this approach failed to consider the fact that § 1322(b)(2) "focuses on the modification of the 'rights of holders.'" *Id.* Thus, because the creditor's claim in that case was partially secured, the Court found that it was "still the 'holder' of a 'secured claim.'" *Id.* at 329, 113 S.Ct. 2106.

*Nobelman* remains in force today as applied to partially secured claims. However, many courts, including the Ninth Circuit, have held that "a wholly undersecured lien is [not] protected by the anti-modification clause of § 1322(b)(2)." *Zimmer*, 313 F.3d at 1224, 1227; *see also In re Lam*, 211 B.R. 36, 40–41 (9th Cir. BAP 1997) (finding that the Nobelman rationale does not apply to wholly unsecured claims because the rights of the creditor are "empty rights," that the creditor was never a "holder of a secured claim" and that extending antimodification protection may increase Chapter 11 filing).

Finally, the other provision at issue in this appeal is 11 U.S.C. § 1328(f). This section, added in 2005 under the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) provides that "the Court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor(s) received a discharge in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter or in a case under chapter 13 of this title during the two year period preceding the date of such order." 11 U.S.C. § 1328(f). Appellants received a discharge in a Chapter 7 case, which was filed on December 7, 2006 and discharge entered on March 13, 2007, and thus discharge of this Chapter 13 case is prohibited under § 1328(f) as a matter of law. (Appellants' Brief at 13.)

## II. Analysis of Issues

In this case, the Bankruptcy Court stated that it believed the 506(d) relief requested by Appellants was inappropriate under *Dewsnup:*

> The other significant problem for anyone seeking 506(d) relief is that there is Supreme Court authority directly on point, directly to the contrary. And the decision is *Dewsnup v. Timm....* *Dewsnup* was a Chapter 7 case that specifically did not allow use of 506(d) in the manner you're suggesting. There is no real distinction between 506(d) in a [Chapter] 7 and 506(d) in a Chapter [13] case.

(Transcript of Proceedings on March 24, 2009.) Accordingly, the Bankruptcy Court presumably disallowed avoidance under 506(d) in this Chapter 13 case under *Dewsnup.* Moreover, the Bankruptcy Court "recognize[d] that there [are] some lower court decisions that suggest to the contrary, [but was] well convinced that they are wrong ... [pursuant to] ... the operative Ninth Circuit." (*Id.*) The Bankruptcy Court, however, did not elaborate on either the district court or Ninth Circuit cases, leaving the Court little guidance

as to his rationale.[1]

Appellants contend that the Bankruptcy Court erred in relying on *Dewsnup* for prohibiting 506(d) avoidance for the wholly unsecured lien in this case. Appellants argue that not only have many courts held that *Dewsnup* is inapplicable in a Chapter 13 context but also that the Ninth Circuit and other district court and bankruptcy court cases have found avoidance appropriate under Section 506(d). (*See* Appellants' Brief at 10–11 (listing cases).)

Specifically, several cases assert that *Dewsnup's* holding is inapplicable outside the Chapter 7 context. In *In re Enewally v. Washington Mutual Bank*, the Ninth Circuit observed that "the extent to which lien stripping would be allowed under other chapters of the Bankruptcy Code remained an open question after *Dewsnup*, as the Fifth Circuit explained:

> The rationales advanced in the Dewsnup opinion for prohibiting lien stripping in Chapter 7 bankruptcies, however, have little relevance in the context of rehabilitative bankruptcy proceedings under Chapters 11, 12, and 13, where lien stripping is expressly and broadly permitted, subject only to minor qualifications. The legislative history of the Code makes clear that lien stripping is permitted in the reorganization chapters."

368 F.3d 1165, 1169–70 (9th Cir.2004), *cert. denied*, 543 U.S. 1021, 125 S.Ct. 669, 160 L.Ed.2d 497 (2004) (quoting *Bartee v. Tara Colony Homeowners Ass'n*, 212 F.3d 277, 291 n. 21 (5th Cir.2000)). *In re Enewally*, while recognizing this "open question," did not proceed to answer the question as it pertains to avoiding unsecured liens under 506(d) in the Chapter 13 context.[2] Thus, the Court is offered little guidance by the Ninth Circuit as to this specific question.

Appellants also cite the Bankruptcy Court in the District of Arizona, which explicitly held that *Dewsnup* in inapplicable outside of Chapter 7 cases:

> Consequently, the Court's conclusion in *Dewsnup* is inapplicable outside of Chapter 7 not only because the Court expressly declined to address fact scenarios not then before it, but more importantly because the sole reason for the Court's conclusion does not apply outside of Chapter 7—the repealed Bankruptcy Act did not prohibit lien stripping in Chapter IX, X, XI, XII and XIII. Because *Dewsnup* contains no other reason to read 'allowed secured claim' in § 506(d) differently in § 506(a), such a reading has no application outside of Chapter 7.

*In re Castro*, 285 B.R. 703, 708–09 (Bankr. D.Ariz.2002). While this is not authoritative, its rationale is analytically helpful.

Most persuasively, however, is Judge Adler's opinion in *In re Geyer*, 203 B.R. 726 (Bankr.S.D.Cal.1996), from the Bankruptcy Court in this district. In *In re Geyer*, Judge Adler found that "[t]he

---

**1.** Moreover, Appellants' motions for valuation and lien stripping went unopposed, leaving the Bankruptcy Court and this Court to evaluate the merits of Appellants' motion and, ultimately, the Bankruptcy Court's order, without opposition.

**2.** *In re Enewally* focused on whether a debtor may choose to both "strip and pay" a claim under 11 U.S.C. 1322(b)(2) or "cure and maintain" a claim under 11 U.S.C. § 1322(b)(5), ultimately holding that a debtor

may choose one or the other, but not both. 368 F.3d at 1170–72; *see also In re Rascon*, 321 B.R. 48, 53–54 (N.D.Cal.2005) (citing *In re Enewally* for the proposition that "[a] Chapter 13 debtor may not invoke both section 506(a) to bifurcate, and thereby reduce, the amount of a creditor's secured claim and section 1322(b)(5) to extend repayment of the secured portion of the claim beyond a period of five years.")

*Dewsnup* court did not decide the result if the lien were determined to be completely unsecured under section 506(a)" and went on to answer the question of whether a Chapter 13 debtor "may ... use 506(d) to void or "strip off" a lien on their primary residence when the lien is an unsecured claim under section 506(a)?" 203 B.R. at 727, 728. The court noted that this issue appeared to be one of first impression in the Ninth Circuit. *Id.* at 727 n. 1. Ultimately, the *In re Geyer* court found that such a void or "strip off" was permissible under Section 506(d). *Id.* at 730–31.

Specifically, Judge Adler in *In re Geyer* held that the *Nobelman* Court's "concern does not apply here when the creditor's claim is totally unsecured. Where the estate's interest in property is zero, the claim under section 506(a) is completely unsecured and is not entitled to the protection of section 1322(b) (2)." 203 B.R. at 729. In conclusion, the court held:

> [T]he term "secured claim" as used in section 1322(b)(2) has the same meaning as the term "secured claim" in section 506(a). Unless there is some equity to which the creditor's lien attaches, there is no allowed secured claim and no entitlement to the protections against modification contained in section 1322(b)(2).

*Id.* at 730. Accordingly, "[a] chapter 13 debtor may "strip-off" a lien on his or her primary residence under the plan or under section 506(d) when the lienholder's interest is totally unsecured." *Id.; see also In re Canonigo*, 276 B.R. 257, 264 n. 10 (Bankr.N.D.Cal.2002) ("The majority of courts, including the Ninth Circuit Bankruptcy Appellate Panel, have held that a lien that is wholly unsecured by any equity in the underlying property may be 'stripped off' pursuant to section 506(d)" (citing *In re Lam*, 211 B.R. 36, 38–41 (9th Cir. BAP 1997), *appeal dismissed on other grounds*, 192 F.3d 1309 (9th Cir.1999) (oth-er citations omitted))). Appellants contend, therefore, that by prohibiting avoidance of a wholly unsecured claim under § 506(d) despite *In re Geyer, Zimmer*, and *In re Lam*, "the Bankruptcy Court committed error of law and should be reversed." (Appellants' Brief at 13.)

■ Appellees, in opposition, first contend that lien avoidance under § 506(d) is inappropriate because the statute states that a lien which is "not an allowed secured claim is void, unless ... (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title." 11 U.S.C. § 506(d)(2). Appellees contend that it did not file a secured claim and that no entity filed a proof of claim on behalf of Appellees, thus there is no allowed secured claim to be avoided. (Appellees Brief at 2–3.) This argument is unavailing. The "unless" provision applies only when the claim is not an allowed claim due *solely* to the failure to file a proof of such claim. Here, the claim is not an allowed secured claim because the claim is wholly unsecured given that the value of the first deed is greater than the value of the Home, not only because no proof of claim was filed. *See* 11 U.S.C. § 506(a).

Appellees' then contend that the Court did not err in denying avoidance under 506(d), quoting Judge Taylor's concerns regarding *Dewsnup* and that district courts who have held otherwise are wrong. (*See* Transcript of Proceedings on March 24, 2009.) Appellees also assert that all cases cited by Appellants which hold that 506(d) avoidance is applicable were decided prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA), and that these courts may rule differently now. (Appellees' Brief at 3.) Notably, Appellees' argument for why 506(d) is inappropriate in this case is intertwined with whether the Bankrupt-

cy Court erred in making avoidance of the lien conditional upon plan completion and discharge.

It is uncontested in this appeal that Appellants are not entitled to discharge of their Chapter 13 case under 11 U.S.C. § 1328(f). (*See* Appellants' Brief at 13; Appellees' Brief at 5.) Section 1328(f) states that "the Court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor(s) received a discharge in a case filed under chapter 7, 11, or 12 of this title during the 4–year period preceding the date of the order for relief under this chapter or in a case under chapter 13 of this title during the two year period preceding the date of such order." 11 U.S.C. § 1328(f). Appellants received a discharge in a Chapter 7 case on March 13, 2007, and thus this Chapter 13 case may not be discharged as a matter of law. However, the Bankruptcy Court's Order and Decree in this case orders: "Upon completion of the Plan and Debtors' discharge, the debt to Creditor secured by the Third Trust Deed shall be deemed fully satisfied and Creditor shall take all steps necessary and appropriate to reconvey and release the Third Trust Deed against the Home." (Doc. No. 1.)

Whether or not avoidance is conditional upon plan completion and discharge is important because, as Appellees explain:

> In chapter 13, if a case is dismissed, debts "spring back" into existence according to the pre-petition accounting and all plan provisions are essentially nullified. Conversely, when a debtor completes the plan and receives dis-

charge, any debts provided for by the plan (with exceptions as set forth in § 1328) are no longer legally collectible debts because of the discharge.

(Appellees' Brief at 4.)

Thus, Appellees argue that liens cannot be properly avoided in this case at all, given that this is a no-discharge Chapter 13 case as a result of Appellant's previous Chapter 7 discharge. Appellees' sum up their argument:

> Here, the debtors acquiesce that they [are] not entitled to discharge. The ability to avoid the lien is tied to the confirmation of the plan, completion of the plan and discharge. Since the debtors are not entitled to a discharge, then the lien should not be subject to avoidance. Even if the Court found the debtors' claim wholly unsecured upon hearing on valuation, the unsecured claim would spring back as would the lien upon completion of the plan due to the no-discharge aspect of this case.

(Appellees' Brief at 5; *see also* Appellants' Brief at 15 (citing 11 U.S.C. § 349(b)(1)(C), which states that liens avoided under 506(d) are reinstated upon case dismissal))

In support, Appellees rely on *In re Jarvis*, 390 B.R. 600 (Bankr.C.D.Ill.2008).[3] The issue in *In re Jarvis* was "the extent to which the Debtor may obtain the permanent modification of a creditor's rights when the Debtor is not entitled to a discharge after completion of Plan payments." 390 B.R. at 601. The Plan provided that a fully unsecured claim would be void pursuant to 11 U.S.C. § 506(d) and stripped off upon confirmation of the Plan.[4]

---

**3.** Appellees also cite *In re Blosser*, which relied on the "compelling" reasoning of *In re Jarvis*, in dicta. 2009 WL 1064455, at *1 (Bankr.E.D.Wis.2009).

**4.** The Plan read: "Debtors indicate the claim of Heartland Credit Union is fully unsecured

as the value of the residence which is collateral for said claim does not exceed the value of the first mortgage and associated cost. As such claim is fully unsecured, the claim of Heartland Credit Union is void with respect to 11 USC 506(d) and such security interest is

*Id.* at 602. After discussing the bifurcation of an undersecured claim under 11 U.S.C. § 506(a), and the *Dewsnup* decision, the court recognized that "[b]ecause Chapter 13 expressly allows the modification of the rights of creditors, lien rights may be altered by the terms of a confirmed Chapter 13 plan" under 11 U.S.C. § 1322(b)(2), unless the claim is secured only by a lien on the debtor's principal residence. *Id.* at 603–04 (citing *Nobelman*, 508 U.S. 324, 113 S.Ct. 2106). The *Jarvis* court then went on to state that many courts have found that the 1322(b)(2) anti-modification provisions do not apply to wholly unsecured claims. *Id.* at 604. But, at this point, the *Jarvis* court diverges from those cases and discusses the effect the no-discharge provision of § 1328(f) has on the state of the law.

At the time the cases cited in *Jarvis* (and the cases cited by Appellants in this case, as well), the Bankruptcy Code did not contain a waiting period after discharge in a prior case before discharge in a Chapter 13 case. *Id.* at 604; *see also* 11 U.S.C. § 1328. However, in 2005, the BAPCPA changed the law by adding 1328(f), which provides that a Court may not discharge a Chapter 13 case during a 4–year period following a discharge in a Chapter 7, 11 or 12 case. 11 U.S.C. § 1328(f)(1). These new "no-discharge" cases therefore "raise issues of the extent to which relief can be granted in the absence of discharge, and whether the cases are filed in good faith." *In re Jarvis*, 390 B.R. at 605.

The *Jarvis* court relies on a previous case from the bankruptcy court in the same district, *In re Lilly*, 378 B.R. 232 (Bankr.C.D.Ill.2007).[5] The *Lilly* court found:

> Where a debtor does not receive a discharge, however, any modifications to a creditor's rights imposed in the plan are not permanent and have no binding effect once the term of the plan ends (citation omitted). This longstanding principal was not altered by BAPCPA.

*Jarvis*, 390 B.R. at 605 (quoting *Lilly*, 378 B.R. at 236–37). Ultimately, the *Jarvis* court held that "[a] no-discharge Chapter 13 case may not ... result in a permanent modification of a creditor's rights where such modification has traditionally only been achieved through a discharge and where such modification is not binding if a case is dismissed or converted. This Court can find no evidence that, by adding new § 1328(f), Congress intended to expand debtors' remedies in the way that the Debtor here proposes." *In re Jarvis*, 390 B.R. at 606. Accordingly, the court did not confirm the Plan as proposed. *Id.* at 607.

Using this rationale—that permanent modification (avoidance) of the wholly unsecured claim historically achieved only through discharge is inappropriate in this case—Appellees argue that "[i]n the context of a case where no discharge can enter, a debt that is lien stripped would necessarily spring back into existence when the case is closed as there would be no discharge." (Appellees' Brief at 5.)

---

hereby stripped off upon confirmation of Debtor's Plan. Heartland Credit Union's lien is stripped off and Heartland Credit Union shall receive no payments through the Debtor's Plan and any security interest shall be stripped off and considered void." *In re Jarvis*, 390 B.R. at 602.

5. The *Lilly* court focused on the impact of "§ 1325(a)(5)(B) which provides specifically for the treatment of 'allowed secured claims.'" *In re Jarvis*, 390 B.R. at 605 (citing 11 U.S.C. § 1325(a)(5)(B); *Lilly*, 378 B.R. at 235). Nevertheless, the *Jarvis* court found that the rationale used by *Lilly* concerned a creditor's rights in a no-discharge case is instructive. *Id.*

Thus, avoidance of the lien, according to Appellees, is inappropriate given that Appellants are not entitled to discharge under § 1328(f). (*Id.*)

The Court appreciates the rationale articulated in *Jarvis* regarding the impact of § 1328(f) on avoidance of liens. *In re Jarvis,* however, is distinguishable from the present case in one very important aspect. The court in *Jarvis* relied on established precedent that "though the 'lien-avoiding effect of the confirmed plan' is established at confirmation, actual lien avoidance is contingent upon the debtor completing the plan and receiving a discharge." *In re Jarvis,* 390 B.R. at 604 (citing *In re King,* 290 B.R. 641, 651 (Bankr.C.D.Ill.2003)); *see also id.* at 607. In fact, the *Jarvis* court explicitly found that "the *King* court was on solid ground in holding that completion of the plan and receipt of a discharge are required to obtain permanent relief in the form of lien avoidance based on § 506." *In re Jarvis,* 390 B.R. at 604.

■ Appellees, however, do not cite, nor can this Court find, any similar holding or precedent in this district upon which this Court can rely. To the contrary, Appellants persuasively argue that a lien may be stripped or voided pursuant to 506(d) at the time of confirmation, not upon discharge. *See In re Geyer,* 203 B.R. 726, 729–30 (holding that a Chapter 13 debtor may strip off the lien either "under the plan *or* under section 506(d) when the lienholder's interest is totally unsecured" (emphasis added)); *see also In re Fuller,* 255 B.R. 300, 306 (Bankr. W.D.Mich.2000) ("[L]ien avoidance under Section 506(d) does not require the commencement of a separate proceeding. Rather, it is the inevitable byproduct of the Section 506(a) valuation process.... Once the value of the secured claim is determined, the attendant lien is automati-

cally 'stripped.'") Moreover, the plain language of the Bankruptcy Code does not provide for a discharge requirement, and this Court is reluctant to impose one without further guidance from the Ninth Circuit.

Accordingly, the Court is not bound by any similar precedent establishing that lien avoidance under section 506 is not effective at confirmation, but only at discharge, nor does it find that the Code provides for such a result. Thus, the main rationale in *Jarvis*—that a no-discharge case cannot expand the rights if a debtor "where such [permanent] modification has traditionally only been achieved through a discharge"— is not present in this case. *See In re Jarvis,* 390 B.R. at 606. Accordingly, *In re Jarvis* is inapposite to the case at hand.

## CONCLUSION

In conclusion, the Court agrees with the courts in this district and the Ninth Circuit that avoidance of a wholly unsecured claim pursuant to 506(d) is appropriate. *See In re Geyer,* 203 B.R. 726 (Bankr.S.D.Cal. 1996), *In re Lam,* 211 B.R. 36 (9th Cir. BAP 1997), and *Zimmer v. PSB Lending Corporation,* 313 F.3d 1220 (9th Cir.2002). Accordingly, the Court finds that the Bankruptcy Court erred in disallowing avoidance under 506(d) while allowing avoidance under 11 U.S.C. § 1322(b)(2). The Court, however, does not address whether avoidance under § 1322(b)(2) is per se inappropriate.

The Court further holds that the Bankruptcy Court erred in making avoidance of the wholly unsecured claim conditional upon plan completion and discharge. There is no discharge requirement in this district prior to avoidance or stripping of a lien under section 506, and the Court will not impose one absent more guidance from this district or the Ninth Circuit in the absence of plain language in the Bankrupt-

cy Code. Further, the no-discharge restriction of section 1328(f) does not alter this Court's opinion regarding the applicability of 506(d) avoidance.

Accordingly, the Court **HEREBY REVERSES** the decision of the Bankruptcy Court and **REMANDS** for proceedings consistent with this opinion.